## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PRINCE L. WILLIAMS, JR., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-00094-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Prince L. Williams, Jr. has brought this action under 42 U.S.C. §
1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner
of Social Security ("the Commissioner") denying his application for supplemental
security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381,
*et seq*.  With the consent of the parties, the Court has designated the undersigned
Magistrate Judge to conduct all proceedings and order the entry of judgment in this
civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure
73, and S.D. Ala. GenLR 73.  (*See* Docs. 16, 17).

Upon consideration of the parties' briefs (Docs. 12, 13) and those portions of
the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s) in
lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds
that the Commissioner's final decision is due to be **REVERSED and REMANDED**
under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument.
(*See* Docs. 15, 18).

this decision.

## I.     Background

On August 13, 2012, Williams filed an application for SSI[2] with the Social

Security Administration ("SSA"), alleging disability beginning December 1, 1999.[3]

After his application was initially denied, Williams requested a hearing before an

Administrative Law Judge ("ALJ") for the SSA's Office of Disability Adjudication

and Review, which was held on March 12, 2014.  On May 30, 2014, the ALJ issued

an unfavorable decision on Williams's application, finding him "not disabled" under

the Social Security Act and thus not entitled to benefits.  (*See* R. 53 – 63).

The Commissioner's decision on Williams's application became final when the

Appeals Council for the Office of Disability Adjudication and Review denied his

request for review of the ALJ's decision on January 5, 2016.  (R. 1 – 5).  On March 1,

2016, Williams filed this action under § 1383(c)(3) for judicial review of the

Commissioner's final decision.  (Doc. 1).    *See* 42 U.S.C. § 1383(c)(3) ("The final

determination of the Commissioner of Social Security after a hearing [for SSI

benefits] shall be subject to judicial review as provided in section 405(g) of this title

to the same extent as the Commissioner's final determinations under section 405 of

this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the

---

[2] SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).

[3] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.  Standards of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added). As is plain from the statutory language, this deferential standard of review is applicable only to findings

of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (footnote and some citations and quotation marks omitted)).   This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).   *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for … SSI requires that the claimant be disabled. 42 U.S.C. § … 1382(a)(1)-(2). … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § … 1382c(a)(3)(A) …

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per

curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-

(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate

both a qualifying disability and an inability to perform past relevant work." *Moore*,

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

"In determining whether the claimant has satisfied this initial burden, the

examiner must consider four factors: (1) objective medical facts or clinical findings;

(2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005

(11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III.   Analysis

At Step One, the ALJ determined that Williams had not engaged in substantial gainful activity since the date of his SSI application, August 13, 2012. (R. 58). At Step Two, the ALJ determined that Williams had the following severe impairments: stuttering and epilepsy. (R. 58). At Step Three, the ALJ found that Williams did not have an impairment or combination of impairments that meets or medically equals the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 58 – 59).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under

the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Williams had the RFC "to perform medium work as defined in 20 CFR 416.967(c)[,]"[6] with the following limitations: "[T]he claimant can occasionally lift or carry 50 pounds, frequently 25 pounds.  He can sit/stand/walk for 6 hours in an 8-hour workday.  He can push/pull as much as he can lift or carry.  The claimant can occasionally climb ramps and stairs.  He can never climb ladders or scaffolds.  He can frequently balance, stoop, kneel, crouch and crawl.  He can perform jobs not involving complex or frequent verbal communication.  He can never work around unprotected heights, moving mechanical parts, or extreme heat.  He can never operate a motor vehicle.  He is limited to simple tasks and short simple instructions.  He can occasionally respond appropriately to the public."  (R.

---

[6] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4.  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner] determine[s] that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

59).

The ALJ determined that Williams had no past relevant work.  (R. 62).  At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Williams can perform given his RFC, age, education, and work experience.  (R. 62 – 63).  Thus, the ALJ found that Williams was not disabled under the Social Security Act.  (R. 63).

## A.    Severe Impairments

Williams claims that the ALJ reversibly erred by failing to classify his depression and anxiety as "severe impairments" at Step Two.[7]  The Commissioner argues that substantial evidence supports this decision, but the Court need not decide whether this is so.  Because the ALJ determined at Step Two that Williams had other "severe impairments," any failure to include these additional "severe impairments" is harmless.

"At step two the ALJ must determine if the claimant has any severe impairment.  This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  *See also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("[W]e have recognized that step two requires only

_____

[7] Williams's claims of error have been reordered for flow.

a finding of 'at least one' severe impairment to continue on to the later steps. *See Jamison,* 814 F.2d at 588. Further, the regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.").  Moreover, the ALJ's decision adequately demonstrates that she considered depression and anxiety at both Step Three (*see* R. 58 (stating that the ALJ considered Williams's impairments individually and in combination)) and Step Four (*see* R. 60 (noting "diagnostic impressions of major depressive disorder and generalized anxiety disorder" but giving them "little weight … given the claimant's lack of any mental health treatment and the lack of any significant signs of anxiety or depression during the October 2013 psychological consultative examination…").[8]

---

[8] *See Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914–15 (11th Cir. 2014) (per curiam) (unpublished) ("Although the ALJ found that Mr. Freeman's back pain was not a severe impairment, the record demonstrates that she considered and discussed these symptoms at subsequent steps of the sequential analysis. Accordingly, any error in failing to find that Mr. Freeman's lower back pain was severe was harmless because the symptoms were nonetheless considered in the subsequent steps of the ALJ's analysis."); *Tuggerson-Brown*, 572 F. App'x at 951-52 ("While the ALJ did not need to determine whether every alleged impairment was "severe," he was required to consider all impairments, regardless of

Accordingly, the Court **OVERRULES** Williams's claim of error in the ALJ's determination of "severe impairments" at Step Two.

## B.     Testimony of Williams's Mother

Williams next argues that the ALJ reversibly erred because her decision "is devoid of any mention of the testimony offered by [Williams']s mother regarding [his] seizure disorder" and that "[n]o explanation is provided for failing to consider the lay witness testimony." (Doc. 12 at 6).  This claim is contradicted by the ALJ's decision, which expressly noted that Williams's "mother testified to more seizures" but found more credible Williams's own testimony that he had only experienced "one seizure in the last month and none for the previous 12 months[,] as it is consistent with the medical record." (R. 61- 62).[9]  Williams does not argue that this finding is unsupported by substantial evidence.  *See Foote v. Chater*, 67 F.3d 1553,

---

severity, in conjunction with one another in performing the latter steps of the sequential evaluation. Despite Tuggerson–Brown's arguments to the contrary, it is apparent from the face of the ALJ's decision and the RFC report relied upon by the ALJ that the ALJ did, in fact, consider all medical evidence in combination in concluding that Tuggerson–Brown was not disabled. In performing his analysis, the ALJ stated that he evaluated whether Tuggerson–Brown had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence. *See Wilson*[ *v. Barnhart*]*,* 284 F.3d [1219,] 1224–25[ (11th Cir. 2002) (per curiam)]. The ALJ went beyond those statements in his analysis, specifically discussing evidence of Tuggerson–Brown's depression, diabetes, leg, neck, and back pain, and mild degenerative disc disease. The RFC report likewise addressed many of the same symptoms. Accordingly, the record sufficiently demonstrates that the ALJ properly considered all of Tuggerson–Brown's impairments, even those not specifically found to be severe, in reaching a conclusion that she was not disabled. Tuggerson–Brown does not specifically challenge or assert that the ALJ's ultimate conclusion was not based on substantial evidence in some other regard, and therefore we affirm the denial of disability benefits.").

[9] This claim of error also conclusorily references the ALJ's alleged failure to consider the testimony of Williams's "aunt, who testified at the hearing." (Doc. 12 at 6).  This appears to have been included in error, as only Williams, his mother, and a vocational expert gave testimony at the ALJ hearing.

1562 (11th Cir. 1995) (per curiam) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Accordingly, the Court **OVERRULES** Williams's claim of error as to the ALJ's consideration of Williams's mother's testimony.

## C.   PRTF Technique

Finally, Williams argues that the ALJ reversibly erred in failing to evaluate his mental impairments using the technique required by the Social Security regulations. "Agency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form ("PRTF")] for evaluating mental impairments. 20 C.F.R. § 404.1520a-(a) … The ALJ is required to incorporate the results of this technique into the findings and conclusions. 20 C.F.R. § 404.1520a-(e)(2)." *Moore*, 405 F.3d at 1213–14.

> The PRTF technique requires rating the degree of a claimant's functional limitations in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The regulations provide the first three factors (activities of daily living; social functioning; and concentration, persistence, or pace) are rated on a five-point scale of "[n]one, mild, moderate, marked, and extreme" while the "fourth functional area (episodes of decompensation)" is rated using "the following four-point scale: [n]one, one or two, three, four or more." 20 C.F.R. 404.1520a(c)(4).

*Mills v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 4361933, at *1 (11th Cir. Aug. 16, 2016) (per curiam) (unpublished). "[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of

analysis into his findings and conclusions.  Failure to do so requires remand."
*Moore*, 405 F.3d at 1213–14.

The Commissioner does not deny that the ALJ failed to utilize the PRTF technique but argues that this claim is "unavailing, because the ALJ specifically explained why she found that Plaintiff had no medically determinable psychological impairments."  (Doc. 13 at 7).  However, only a "colorable claim of mental impairment" is needed to trigger the requirement to apply the technique.  As the Commissioner points out in her brief, the ALJ discussed and analyzed evidence concerning Williams's mental impairments.  Specifically, the ALJ noted "diagnostic impressions of major depressive disorder and generalized anxiety disorder" from a November 5, 2012 psychological consultative examination but gave them "little weight" due to Williams's "lack of any mental health treatment and the lack of any signs of anxiety or depression during [an] October 2013 psychological consultative examination…"  (R. 60).  The ALJ also gave "great weight" to the report from the October 2013 psychological consultative examination, noting that it was "detailed" and "included psychological testing, a clinical interview, and observations."  (R. 61). The ALJ expressly noted that Williams "was assigned a GAF of 67" at the October 2013 examination, "indicative of mild mental limitations."  (R. 61).  The ALJ's discussion of the psychological evidence of record indicates an implicit finding that Williams had made a "colorable claim of mental impairment."[10]  Thus, the ALJ was

---

[10] *See Mills*, 2016 WL 4361933, at *1 ("The ALJ did not make a specific finding regarding whether Mills presented a colorable claim of mental impairment … However, because the ALJ analyzed and discussed Mills' evidence of mental impairment including complaints of depression and a bipolar diagnosis, we infer from that analysis and discussion that the ALJ

required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into h[er] findings and conclusions." *Moore*, 405 F.3d at 1214.

It is undisputed that the ALJ did not complete a PRFT and append it to her decision; the decision also does not specifically reference the PRTF technique. The Commissioner has made no effort to show that the ALJ's decision otherwise adequately accounts for the technique, and the Court's own review finds that it does not. *Cf. Mills*, 2016 WL 4361933, at \*2 ("The ALJ's decision does not specifically reference the PRTF technique. The ALJ discusses some of the functional areas in analyzing Mills' claim, however, so we must determine whether the ALJ's reasoning was enough to comply with the PRTF requirement." (citing *Moore*, 403 F.3d at 1214) (ALJ must "complete a PRTF and append it to the decision, ***or incorporate its mode of analysis into his findings and conclusions***" (emphasis added))).

The ALJ's decision notes that at the October 2013 evaluation Williams "reported the ability to feed, bathe, groom and dress himself without assistance[,]" as well as the ability to "use a phone, count money, prepare meals, shop for groceries, and meet basic transportation needs." (R. 61). The ALJ also gave "great weight" to the 2013 consultative evaluator's opinion that Williams had "adequate ability to … work independently…" (R. 61). These findings are arguably relevant

determined that Mills' claim was at least colorable. *See Richardson v. United States*, 468 U.S. 317, 326 n.6, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984) ('A colorable claim, of course, presupposes that there is some possible validity to a claim.') … Because the ALJ implicitly found that Mills presented a colorable claim of mental impairment, our precedent and the Social Security regulations require the ALJ to complete a Psychiatric Review Technique Form (PRTF) or incorporate the analysis of a PRTF into the decision. *Moore*, 405 F.3d at 1214 …").

to "activities of daily living."[11]   The ALJ also gave "great weight" to the 2013

consultative evaluator's opinions that Williams's "stuttering would likely create at

least mild problems with communicating and interpersonal relations" and that

Williams had "adequate ability … to work with others, although his stuttering

might prove troublesome."  (R. 61).  These findings are arguably relevant to "social

functioning." [12]   The ALJ also gave "great weight" to the 2013 consultative

evaluator's opinions that Williams had "good ability … to understand, remember

and carry out simple/concrete instructions" and "adequate ability to deal with work

---

[11] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 12.00(C)(1) ("Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction. []We do not define 'marked' by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.").

[12] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 12.00(C)(2) ("Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.").

pressures[,]" findings which are arguably relevant to "concentration, persistence, or pace."[13]

Assuming, without deciding, that the foregoing constitutes sufficiently specific findings as to the degrees of limitation for the first three areas of the PRTF technique, the ALJ's decision omits any discussion of the fourth area, "episodes of decompensation." [14]   Failure to include specific findings on any of the PRTF technique's four areas mandates reversal.   *See* 20 C.F.R. § 416.920a(e)(4) ("The decision ***must*** include a specific finding as to the degree of limitation in ***each*** of the functional areas described…" (emphasis added)); *Moore*, 405 F.3d at 1213-14

---

[13] *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 12.00(C)(3) ("Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings … In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits. []In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.").

[14] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."   20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 12.00(C)(4).   While the ALJ's decision contains some discussion of Williams's history of seizures, which might arguably constitute "episodes of decompensation" in certain circumstances, there is no indication that they are the kind relevant to evaluating mental disorders.  *Cf.* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 11.00(H)(1) ("There are various types of generalized and 'focal' or partial seizures.   However, psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02[, concerning neurological disorders].   We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00. In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures).").   Indeed, at Step Three, the ALJ classified them as "motor seizures" and evaluated them under "Listing 11.02."  (R. 58 – 59).

(finding reversible error where the "ALJ failed to even analyze or document [the claimant's] condition in two of the PRTF's functional areas: social functioning and prior episodes of decompensation"); *Mills*, 2016 WL 4361933, at *3 (finding reversible error where "the ALJ's opinion incorporated analysis of three of the four functional limitations[ but] does not reference social functioning").

Accordingly, the Court **SUSTAINS** Williams's claim of error that the ALJ failed to properly evaluate his mental impairments using the PRTF technique required by the Social Security regulations.  Thus, the Court will remand to the Commissioner with the instruction to perform "an evaluation of [Williams]'s mental impairments that complies with the applicable regulations."  *Moore*, 405 F.3d at 1214; *Mills*, 2016 WL 4361933, at *3.[15]

---

[15]     Like the panel in *Mills*, this Court "express[es] no opinion on the ultimate results of the PRTF, only that the technique must be utilized as mandated by the regulations." *Mills*, 2016 WL 4361933, at *3 n.6.
        Williams requests that the Court remand with instructions that he be found disabled, and only requests a remand for further proceedings in the alternative.  Generally, remand to the Commissioner for further proceedings "is warranted where the ALJ has failed to apply the correct legal standards."  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).    This Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Id.  See also Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982.").  Here, remand is being ordered because the Commissioner failed to apply the correct legal standards, and the cumulative effect of the evidence currently does not establish disability without any doubt.  *Cf. Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that

## IV.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued January 5, 2016, denying Williams's application for SSI is **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g), applicable to SSI applications under 42 U.S.C. § 1383(c)(3), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision.   This remand under sentence four of § 405(g) makes Williams a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Williams be awarded Social Security benefits on the subject application following this remand, the Court hereby grants Williams's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of

---

the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."); *Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

a notice of award of benefits from the SSA.[16]  Consistent with 20 C.F.R. § 422.210(c),

"the date of receipt of notice … shall be presumed to be 5 days after the date of such

notice, unless there is a reasonable showing to the contrary."  If multiple award

notices are issued, the time for filing a § 406(b) fee motion shall run from the date of

receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this Order and

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 15th day of November 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").